OWEN GILLIAM III AND MARY L. GILLIAM, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gilliam v. Commissioner
Docket No. 6690-84.
United States Tax Court
T.C. Memo 1986-90; 1986 Tax Ct. Memo LEXIS 519; 51 T.C.M. (CCH) 567; T.C.M. (RIA) 86090; March 5, 1986. Owen Gilliam III and Mary L. Gilliam pro se. Marilyn Devin, for the respondent. AARONS
MEMORANDUM FINDINGS OF FACT AND OPINION AARONS, Special Trial Judge: This case was heard pursuant to section 7456(d)(3) of the Internal Revenue Code and Rules 180, 181 and *520 182 of the Tax Court's Rules of Practice and Procedure.[1]
Respondent determined a deficiency in petitioners' Federal income tax for the year 1980 in the amount of $5,947, with additions to tax under sections 6651(a) and 6653(a) of $189 and $297, respectively. After concessions by petitioners as set forth in the Stipulation of Facts, the following issues remain: (1) whether petitioners failed to include $5,000 of gross receipts on their Schedule C; (2) whether certain deductions other than depreciation on petitioners' Schedule C are allowable; (3) whether the depreciation claimed on petitioners' Schedule C is allowable; (4) whether the interest expense claimed on Schedule A is allowable; (5) whether Owen Gilliam's educational expenses are allowable; (6) whether Owen Gilliam's miscellaneous employee business expenses are allowable; (7) whether petitioners are entitled to an investment tax credit for the business use of their residence; (8) whether petitioners are entitled to a political contributions credit; *521 and (9) whether petitioners are liable for the above mentioned additions to tax. Adjustments to petitioners' medical expense deduction and self-employment tax will turn automatically on the resolution of these issues. To the extent stipulated the facts are so found. Petitioners Owen and Mary Love Gilliam are husband and wife and resided in Los Angeles, California at the time of filing their petition. Throughout 1980, Owen was employed full-time as a computer programmer for the Honeywell Corporation. In May of that year petitioners purchased their home, together with the accoutrements of a child care business, from a former child care operator, and established as a sole proprietorship the Love Infant Care Center (the "Center") at their residence. The purpose of the Center was to provide day care services for children six months to three years old. Petitioners charged approximately $50 per child per week for this service and cared for approximately 10 children each day throughout 1980. The main issues before us involve the Center's gross receipts and deductions. The issues presented in this case are primarily factual. Petitioners have the burden of proof. Welch v. Helvering,290 U.S. 111 (1933); *522 Rule 142(a). For clarity, facts and law will be combined under the headings set forth below. Schedule C Gross Receipts
On their 1980 Schedule C petitioners reported $19,504 in gross receipts. In the notice of deficiency respondent increased petitioners' gross receipts by $5,000. This increase was based upon total deposits during 1980 of $29,763 in the Center's Security Pacific National Bank business account. The revenue agent who audited petitioners' records noticed the $10,259 difference between the amount deposited in the account and the amount reported on their return and inferred that $5,000 of this difference represented unreported gross receipts from the Center's activities. Petitioners contend that the entire difference is comprised of an initial start-up deposit and ongoing contributions to capital made from their other accounts. This case was initially set for trial on October 30, 1985. On that date petitioners introduced into evidence the Center's bank statements which set forth the 1980 transactional activity of that account. However, it soon became apparent to the Court that petitioners could not distinguish entries on these statements which represented *523 contributions to capital from those representing receipts from business operations. Rather than being subjected to a lengthy audit session in order to do what our Rules require of the parties prior to trial (see Rule 91), we continued the matter until November 5, 1985. The Court instructed petitioners to meet with respondent in order to narrow this and other issues for trial. During the interim petitioners prepared a spread sheet which purported to detail the source of the deposits to the Center's bank account which were not generated by the Center's operations. This spread sheet shows various withdrawals from petitioners' other accounts at Bank of America, Honeywell Credit Union and other minor sources. These withdrawals total $9,627.46 for 1980. Petitioners testified that the $50 per week that they charged for each child was not enough to make the Center self-sustaining and therefore all of the withdrawals were deposited into the business account in order to meet operating requirements. Respondent argued that the spread sheet merely listed petitioners' withdrawals from other accounts and did not establish how much, if any, of these withdrawals were actually deposited in the *524 Center's business account. The Court realizes that reconstruction of income five years after the fact is a difficult task. Petitioners spread sheet and supportive testimony were helpful in tracing some of the amounts withdrawn from the other accounts. However, petitioners did not persuade the Court that the entire $5,000 in dispute represented capital contributions. In a situation such as this the Court has the authority to make an approximation, although we are cautioned to "bear heavily" against a taxpayer where proof is lacking. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Accordingly, based upon the entire record herein and using our best judgment, we find and hold that petitioners' Schedule C gross receipts should be increased by $3,000. Schedule C Deductions
Petitioners claimed $27,643 in total deductions (exclusive of depreciation) on their Schedule C. Since respondent allowed $20,884 of these deductions in the notice of deficiency, $6,579 remained in dispute at the beginning of trial. As the November 5th trial progressed it became apparent to the Court that neither respondent nor petitioners could identify which of the deductions had *525 been allowed or disallowed in the notice of deficiency. Again faced with the inappropriate alternative of conducting a full-blown audit session, the Court called a recess during which the parties held extensive negotiations and agreed that the amounts listed below were in issue. Regarding the items listed below petitioners presented some documentary evidence and their own testimony in an attempt to meet their burden of proof. Based upon the scanty record herein--in some cases there was no proof whatsoever--and using our best judgment, under the authority of Cohan v. Commissioner,supra, we find and hold that petitioners are entitled to additional deductions as listed in the last column of the schedule set forth below. Additional
Amount
Amount
Amount
Amount
Claimed On
Conceded by
In
Allowed by
Item
Schedule C
Respondent
Issue
the Court
Car Expenses
$1,560
$0
$1,560
$780
Dues &
75
10
65
0
Publications
Office Supplies
3,528
2,834
694
0
and Supplies
Repairs
1,258
0
1,258
800
Telephone
502
251
* 0
Utilities
330
247
* 0
Wages
10,317
8,600
* 550
0
Refunds
465
275
190
95
Taxes
835
649
* 0
Miscellaneous
628
332
296
0
Food
1,916
0
1,916
1,816
Advertising
500
518
0
Bank Costs
25
42
0
Interest Expense
4,327
4,327
0
Laundry
685
685
0
Legal & Pro-
350
470
0
fessional Services
Postage
125
125
0
Real Estate Tax
217
217
0
*526 Depreciation
On their Schedule C petitioners deducted $3,617 for depreciation, of which respondent allowed $2,406 in the notice of deficiency. This issue concerns primarily the basis of the Center's building and furniture. Petitioners bought their house for $150,000. They used one-half of this figure as the basis to compute the Center's depreciation. Respondent allocated 60 percent of the purchase price to the building and 40 percent to the nondepreciable land. After a minor adjustment respondent's allocation to the building amounted to $88,950. Respondent then allocated one-half of the building's value to the Center, i.e. $44,475, and computed depreciation on this amount. We believe that respondent's allocation with respect to the building was fair and reasonable, and we sustain his position on this issue. As to the basis of petitioners' furniture, respondent computed depreciation on a $1,750 basis. Petitioners had claimed that their furniture had a $6,000 basis and offered a listing of all their pieces and their purported cost. This listing was entirely hearsay and can be given no weight. Petitioners *527 offered no receipts or other evidence to prove the cost of the furniture. Respondent presented a witness who testified that the furniture was in a somewhat used condition. Based upon the record, we sustain respondent's position. Interest Expense
The fourth issue before the Court concerns petitioners' Schedule A interest expense deduction of $4,472. Of this amount, respondent allowed $3,277 in the notice of deficiency, and an additional $128 after discussions with petitioners. Therefore, $1,067 remains in dispute. It is petitioners' burden to provide substantiation for this amount. Petitioners contend that they were not allowed interest paid of $799.37 on a United California Bank (UCB) loan, $204 to Honeywell Credit Union and $64 on a Century Bank credit card. Regarding the UCB loan, petitioners provided a bank statement showing a finance charge of $799.37 on a 10 year loan. This was the total finance charge over the life of the loan, not just the interest that accrued in 1980. The statement shows no repayment schedule of how or when this charge was to be paid. Owen testified that the interest was paid throughout the life of the loan at an 18-percent rate. He also *528 testified that the Honeywell interest was incurred monthly on a car loan. Although the documentary substantiation provided by petitioners was scanty, we believe that Owen's testimony on these items warrants some additional allowance. Again bearing heavily against petitioners, we find that petitioners incurred $100 in allowable interest expense in addition to the amount already conceded by respondent. Cohan v. Commissioner,supra.
Educational Expenses
Petitioners deducted $1,518 on their Form 2106 - Employee Business Expenses for Owen's educational expenses. Of this amount, $618 represented tuition and book cost for Owen's courses at California State University, Dominguez Hills (CSUDH), while the balance (i.e. $900) was purportedly incurred for transportation between petitioners' home and CSUDH. Respondent concedes that petitioners have substantiated $595 in tuition and books, but contends that the entire expense is nondeductible as a matter of law under section 1,162-5(b)(3), Income Tax Regs.
Owen was told by his supervisor at Honeywell that taking college level courses would improve his chances for promotion above his current grade T-5 level. Wanting *529 his career to progress, Owen enrolled in night business and computer programming classes at CSUDH. His principal duties as a T-5 were to program and repair computers. A promotion to grade T-6 or C-6 status would still require him to program computers, and also allow him to be involved in management level decisions such as handling reports, scheduling and planning more complex programs. Under section 1.162-5, Income Tax Regs., educational expenditures which meet certain criteria are considered deductible business expenses. In order to be deductible as a business expense, education which is not undertaken to meet the express requirements of a taxpayer's employer must be shown to maintain or improve the skills required by the individual in his employment. However, under section 1.162-5(b)(3), Income Tax Regs., even though the education does meet the express requirements of the taxpayer's employer or does improve the skills of a taxpayer in his employment, the expenses are not deductible if they are for education which is part of a program of study leading to qualifying the taxpayer in a new trade or business. Here Honeywell did not require Owen to take business and computer classes. *530 It was merely suggested that he should further his education to enhance his possibilities for promotion. Based upon the T-5 job description given by Owen, we believe that these classes helped maintain and improve his skills as a computer programmer and repairman. Furthermore, based upon Owen's credible testimony on this issue, a promotion to grade 6 status would not be considered a new trade or business since it involves basically the same general skills and requirements as a T-5, but with greater responsibilities. Accordingly, petitioners' deduction for tuition and books is allowed to the extent that it was substantiated, i.e. $595. The remaining $900 of petitioners' educational expenses deduction represents mileage driven by Owen between his home and CSUDH. Each weekday after returning home from work Owen would drive 50 miles round trip to his night classes at CSUDH. He claims that he drove 250 miles each week for nine months for a total of 9,000 miles driven for education in 1980. His return shows a deduction of only $900 for transportation. Legally, the situation presented is indistinguishable from Boerner v. Commissioner,T.C. Memo. 1971-54, in which we *531 determined that the deduction should be limited to the excess transportation costs over what it otherwise would have cost the taxpayer to commute between his job and his home. We hold that petitioners are entitled to an educational transportation expense deduction, but we limit the deduction to the amount claimed on the return (i.e. $900). Miscellaneous Deductions
Petitioners deducted $350 as a miscellaneous employee business expense. At trial, petitioners maintained that this amount represented mileage expense for Owen's unreimbursed transportation between various Honeywell plants in West Covina, Azusa, City of Industry and San Diego. Owen testified that he drove 1,800 miles between plants in 1980 for which he received no reimbursement. He also presented a log book for respondent's inspection (as to which respondent questioned the dates of the entries made) but did not request that this log be admitted into evidence. It is not clear from the record how petitioners computed the $350 expense. Unreimbursable transportation expenses incurred between two places of business are deductible. Steinhort v. Commissioner,335 F.2d 496, 503-505 (5th Cir. 1964), *532 affg. and remanding a Memorandum Opinion of this Court. It is, therefore, clear that Owen's unreimbursed trips between Honeywell plants are deductible. However, petitioners presented inadequate evidence to substantiate the number of miles driven or the expenses incurred. We find and hold that petitioners are entitled to a $175 transportation deduction. Cohan v. Commissioner,supra.
Investment Tax Credit and Political Contributions Credit
In September of 1982 petitioners filed a Form 1040X Amended Tax Return on which they claimed a $750 investment tax credit on property they valued at $75,000. At trial petitioners maintained that the credit should have been $7,500, i.e. 10-percent of $75,000. Respondent has disallowed any claim for this credit. Petitioners testified that the $75,000 figure represented the amount of purchase price allocated to their house (apart from their land). However, the investment tax credit does not apply to buildings. Section 48(a)(1)(B); section 1.48-1(a), Income Tax Regs. Accordingly, respondent's position must be sustained. Petitioners' $2 political contributions credit was disallowed by respondent, and since no proof *533 was offered at trial we sustain respondent's position. Additions to Tax Under Sections 6651(a) and 6653(a)
In the notice of deficiency respondent determined additions to tax under sections 6651(a) and 6653(a) in the amounts of $189 and $297, respectively. With regard to the section 6651(a) late filing addition, Owen testified that his 1980 return was timely filed. However, the return was dated "5/1/81" and no evidence of any extensions was introduced. Accordingly, we must sustain respondent's section 6651(a) addition. Turning to the section 6653(a) negligence addition, we note that petitioners' record keeping has been less than exemplary. They offered no proof to rebut the presumption of correctness attached to respondent's determination under section 6653(a). Accordingly, we sustain respondent's position on this issue. See Bixby v. Commissioner,58 T.C. 757, 791-2 (1972). To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. The parties agree that these are the correct amounts in issue.↩